

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANN KEIM,                          :        CIVIL ACTION
    Plaintiff,                 :
                              :
    vs.                        :
                              :
NATIONAL RAILROAD                  :
PASSENGER CORPORATION,             :        NO.  05-CV-4338
    Defendant.                 :

## MEMORANDUM

Davis, J.                                              July 26, 2007

      Presently before the Court is Defendant's Motion for Summary Judgment (Doc. No. 27),

Plaintiff's Response in Opposition (Doc. No. 29), Defendant's Reply (Doc. No. 30) and

Plaintiff's Sur-Reply (Doc. No. 31).  This matter was transferred to this Court's docket by the

Clerk's Office on June 11, 2007.

I.      FACTUAL BACKGROUND[1]

      Plaintiff Ann Keim is an employee of Defendant National Railroad Passenger

Corporation ("Amtrak").  Plaintiff instituted this action against Amtrak for violations of the

Americans with Disabilities Act ("ADA"), the Family and Medical Leave Act ("FMLA"), and

the Pennsylvania Human Rights Act ("PHRA").  Plaintiff's claims arise out of three adverse

employment actions that she suffered, allegedly as a result of taking an extended medical leave

under the FMLA: (1) Defendant terminating her from her position; and following her return, (2)

failing to reinstate her; and (3) failing to hire her to another position for which she applied.

      Keim began her employment with Amtrak in 1973; from the early 1990s to 2004, she was

_____

    [1] The following facts are undisputed unless otherwise noted.

1

a manager in the procurement department. Keim Dep. 29:8-10; 13:18-15:8. As of the beginning of 2004, she held the position of eCommerce Support Analyst. Def.'s Motion, Ex. 3 (personnel records). John Venturella was her direct supervisor from 1995 to 2004. Id., Exs. 4-7. Plaintiff's was a fairly small department, currently consisting of less than ten employees. Venturella Dep. 23:1-12. At the time of her termination in 2004, Plaintiff was one of four eCommerce Support Analysts in the group. Id.[2] Since her promotion to management, Plaintiff consistently received good performance evaluations, although it was noted on multiple occasions that she should focus on improving her technology-related knowledge and skills. See Def.'s Motion, Exs. 4-7.

In the five years leading up 2004, Plaintiff had a number of serious health problems, including a thyroid condition, anemia, diabetes, cervical cancer, and underwent knee surgery and a hysterectomy. Keim Dep. 30:9-20. During this time, she took five leaves of absence. Id. 29:11-31:12. In 1998, she was out for approximately six months, in 1999 and 2000-2001 each for three, in 2002 for six, and in 2003 for less than a month.[3] Def.'s Motion, Ex. 3; Keim Dep. 29:11-31:4. All of these periods of medical leave were taken under Amtrak's short-term disability program. Def.'s Motion, Ex. 3. With the exception of Plaintiff's brief leave in 2003, none were apparently under the FMLA. Id.; Keim Dep. 31:19-21. After each of these leaves, she was always allowed to return to work in her original position.

---

[2] Venturella testified that there are currently a total of five eCommerce Support Analysts, Venturella Dep. 23:8-12, but as discussed later, one of these positions was newly created in the fall of 2004.

[3] While there is no documentation from Plaintiff's personnel records of the six-month leave in 2002, the parties do not appear to dispute that such a leave occurred. Pl.'s Resp. at 12; Def.'s Reply at 7. Furthermore, while neither party mentions the brief leave in 2003, the personnel records proffered by Amtrak nevertheless demonstrate its occurrence. Def.'s Motion, Ex. 3.

In January 2004, Plaintiff suffered a ruptured aneurysm and underwent brain surgery. Keim Dep. 47:1-50:15.  She was hospitalized for close to two months, and was then in out-patient rehabilitation until early May.  Id. 50:9-54:13.  Due to her medical condition, Keim went on short-term disability and FMLA leave effective January 7.  Def.'s Motion, Ex. 3.  Plaintiff finally received medical clearance from her doctor on June 8, 2004, Keim Dep. 54:17-55:5, and returned to work on July 12, 2004, Def.'s Motion, Ex. 21.  Other than not being able to remember a portion of her hospitalization in January 2004, there is no evidence that Plaintiff suffers any long term or residual effects from her aneurysm.  Keim Dep. 50:5-15; Pl.'s Resp. at 12.

While Plaintiff was on medical leave in 2004, her supervisor recommended that Plaintiff's position, left vacant by her absence, be filled permanently.  Venturella Dep. 60:3-61:7. Venturella testified that he decided to terminate Keim from her position because the department's workload required that someone be available then to do the work and because he wanted someone with more technical knowledge.  Id. 40:2-14.  On March 19, 2004, Venturella documented his recommendation in an email to his supervisor, Joe Sousa.  Def.'s Motion, Ex. 9. In the email, Venturella wrote:

> To summarize why I feel that my current vacancy (due to medical leave) should be filled permanently ... [t]he incumbent of the vacant position has had extended leave of absences for the past 4 or 5 years in a row.  Therefore, this has almost become a part-time position ... By filling this vacancy permanently, I believe ... that attendance and productivity would be improved.

Id.  Sousa approved Venturella's recommendation.  Venturella Dep. 60:24-61:10.

On April 23, 2004, Sheila Davidson, Director of Human Resources-East for Amtrak sent Keim a letter advising her that pursuant to Amtrak's policies and to the FMLA, she was no

longer in protected leave status.  Def.'s Motion, Ex. 11.  The letter further advised:

> [D]ue to a critical business need, [Amtrak] will be unable to hold open your
> current position until you return, and will be filling it on a permanent basis.  When
> your medical leave of absence expires, please contact me so that we may review
> what positions may be open at that time.  If a position exists for which you are
> qualified, you can apply for and compete for the position.  If no positions are
> available at the time you are able to return to work, we will consider you as
> having resigned your employment with Amtrak.

Id.; see also id., Ex. 12 (Amtrak's short-term disability policy that managers may fill vacant

positions after 90 days and employee must find new suitable position upon return or be

terminated).

Upon receiving the letter in late April, Plaintiff attempted to contact her managers.  She

claims that she left approximately six voicemail messages for each Sousa and Venturella, but

neither individual returned any of her calls.  Keim Dep. 59:2-9; 62:18-23.  Venturella disputes

receiving any of Keim's messages, and Sousa testified that he may have received some messages

but was advised by Human Resources not to call Keim back.  Venturella Dep. 55:1-10; Sousa

Dep. 45:1-47:9.  Plaintiff then spoke to Davidson and claims that Davidson told her the letter

was the result of a departmental decision and that Keim needed to speak to her department to

obtain more information.  Keim Dep. 60:6-22.  Plaintiff claims Davidson informed her that in

any event, her position would not be open to her upon her return.  Id. 97:14-21; Davidson Dep.

28:7-18; 50:4-51:4.

On or about April 28, Amtrak posted an opening for an eCommerce Support Analyst

position.  Def.'s Motion, Ex. 14.  The position was essentially the same as the one held by Keim,

except that the hiring criteria indicated that a candidate with programming knowledge was

"preferred."  Id.; Keim Dep. 39:15-21.  Plaintiff does not know how to program.  Keim Dep.

39:15-18.  Applications were accepted for 7 days.  Def.'s Motion, Ex. 14.  Plaintiff learned of

this posting on or around April 29, but did not apply for the position because she was still on

medical leave.  Keim Dep. 67:10-68:10.  Nine candidates were interviewed for the position

between May and July 2004.  Pl.'s Resp., Ex. O, ¶ 6.  In this same period, two offers were

initially made, but both individuals declined.  Id. ¶ 4.  On August 20, an offer was made to

Christian Lledo, who accepted and began work on September 1, 2004.  Id.  Lledo was a recent

graduate with a bachelor's degree in Business Administration and Information Systems, and was

proficient in several programming languages.  Def.'s Motion, Ex. 19.

When Plaintiff returned to Amtrak in July 2004, she obtained a non-management, union

position as Inventory Planner.  Keim Dep. 64:2-66:5.  She testified that although she knew her

old position remained unfilled upon her return, she did not contact Sousa or Venturella about

reinstatement because she thought the position was no longer hers.  Id. 66:16-24; 69:12-70:4.

Venturella stated he did not know that Plaintiff was back at Amtrak until a couple of months

after her return.  Venturella Dep. 80:6-14.

On September 3, 2004, Amtrak posted an opening for another eCommerce Support

Analyst position.  Def.'s Motion, Ex. 24.  The listing was virtually identical to the one posted in

April.  Plaintiff submitted a timely application, but was not selected by Venturella for an

interview.  Def.'s Motion, Ex. 25; Venturella Dep. 97:12-98:3.  Venturella testified that Plaintiff

was not as technically strong as the candidates he chose to interview.  Venturella Dep. 96:1-98:6.

The position was subsequently offered to David Parker in January 2005, and he began work in

February.  Def.'s Motion, Ex. 27.  Parker has a bachelor's degree in Management Information

Systems and over 20 years of experience in systems support and IT.  Id., Ex. 26.

II.    LEGAL STANDARD

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating the absence of genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A "material fact" is one that might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

In determining whether there is a genuine issue of material fact sufficient to preclude summary judgment, the court must accept all of the non-movant's statements as true and make all reasonable inferences in favor of the non-moving party. Anderson, 477 U.S. at 256. A non-moving party must establish more than the "mere existence of a scintilla of evidence" in support of its position. Id. at 252. A party cannot avert summary judgment with speculation or by resting on the allegations in his pleadings, but rather must present competent evidence from which a jury could reasonably find in his favor. Anderson, 477 U.S. at 248; Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989). Summary judgment is appropriate where a party fails to make a sufficient showing on an essential element of his case for which he will bear the burden of proof at trial. Celotex, 477 U.S. at 323.

III.    DISCUSSION

    A.    ADA and PHRA Claims

The ADA prohibits employers from discriminating against their disabled employees.  29

U.S.C. § 701 *et seq*.  In order to make a *prima facie* showing of ADA discrimination, a plaintiff

must show: (1) she is "disabled"; (2) she was otherwise qualified to carry out the essential

functions of her job, with or without reasonable accommodation; and (3) she suffered an adverse

employment action as a result of disability discrimination.  Buskirk v. Apollo Metals, 307 F.3d

160, 166 (3d Cir. 2002); Gaul v. Lucent Technologies, Inc., 134 F.3d 576, 580 (3d Cir. 1998).

One is "disabled" under the ADA if she, *inter alia*, is regarded by the employer as having

an impairment that substantially limits one or more of her major life activities.  See Williams v.

Phila. Housing Auth. Police Dep't, 380 F.3d 751, 762 (3d Cir. 2004); 29 U.S.C. § 705(9).  The

ADA encompasses both physical and mental impairments.  29 C.F.R. § 1630.2(h).

"Substantially limits" means, *inter alia*, "[u]nable to perform a major life activity that the

average person in the general population can perform" or "[s]ignificantly restricted as to the

condition, manner or duration under which an individual can perform a particular major life

activity as compared to [that capable by the average person in the general population]."  29

C.F.R. § 1630.2(j)(1).  Working is a "major life activity."  29 C.F.R. § 1630.2(i).  In determining

whether an impairment is substantially limiting, courts should consider factors such as (1) the

nature and severity of the impairment, (2) the impairment's duration or expected duration, and

(3) the impairment's permanent or long-term impact.  29 C.F.R. § 1630.2(j)(2).  One is not

disabled merely because she is unable to work a single, particular job under a particular

employer; the impairment must substantially limit one's ability to perform a whole class or range

of jobs. 29 C.F.R. § 1630.2(j)(3)(i); Ozlek v. Potter, 2006 WL 964484, *4 (E.D. Pa. April 13, 2006) (quoting Weiler v. Household Fin. Corp., 101 F.3d 519, 524 (7th Cir. 1996)).

An employee is "regarded as" disabled if the employer (1) mistakenly believes her to have a substantially limiting impairment that she does not actually have, or (2) mistakenly believes that she has "a substantially limiting impairment when, in fact, the impairment is not so limiting." Sutton v. United Air Lines, 527 U.S. 471, 489 (1999). A plaintiff must do more than just show that defendant thought she was impaired in some manner or that defendant was aware of her impairment. Wilson v. MVM, Inc., 475 F.3d 166, 179 (3d Cir. 2007) (some impairment not enough); Kelly v. Drexel Univ., 94 F.3d 102, 109 (3d Cir. 1996) (awareness insufficient). Defendant must have perceived plaintiff as disabled within the meaning of the ADA. Wilson, 475 F.3d at 179.

Plaintiff alleges that Amtrak violated the ADA and the PHRA when it failed to reinstate her to the eCommerce Support Analyst position when she returned from medical leave, and when it failed to hire her for the same position when she later re-applied for it. Plaintiff claims that these actions were motivated by unlawful discriminatory animus, based on Amtrak's erroneous perception that she was disabled because of her aneurysm.[4] Plaintiff claims that because Venturella and Sousa knew about her aneurysm, would not return her phone calls, and did not hire or reinstate her to her old position, a factual issue exists as to whether Defendant perceived her as disabled.

---

[4] While it is not abundantly clear what major life activities Amtrak is alleged to have mistakenly regarded Keim's aneurysm to have substantially limited, the Court assumes for purposes of this Motion that Defendant's perception of Plaintiff's ability to work is at issue, since Plaintiff's claim seems to revolve around her being denied various employment opportunities.

8

However, these facts are wholly insufficient to defeat summary judgment here because they simply do not establish a prima facie case of disability discrimination.  Indeed, the undisputed evidence in this case shows that Defendant did not regard Plaintiff as disabled.  Initially, while it is possible for a ruptured aneurysm to constitute a disability under certain conditions, see Pietrusiak v. Kammerer, 1999 WL 1068468, *6-7 (N.D. Ill. Jan. 8, 1999) (denying motion to dismiss in ADA case where plaintiff alleged her aneurysm left her with substantial permanent short term memory loss which impaired her ability to work with numbers), there is no evidence in this case that Plaintiff's condition had any residual or long term impact.  In fact, Plaintiff "made a full recovery with the exception of having some memory loss."  Pl.'s Resp. at 12; see also Williams, 380 F.3d at 765 (temporary, non-chronic impairments with little or no long-term impact do not qualify as disabilities under ADA).  Therefore, it is not clear what impairment Defendant mistakenly thought Plaintiff had or what actual impairment Plaintiff had which was subject to Defendant's mistaken perceptions.

Furthermore, even assuming, *arguendo*, that Defendant believed Plaintiff to have been somehow impaired, there is absolutely no evidence that Defendant perceived her to be disabled within the meaning of the ADA.  Plaintiff was on leave from January through July 2004 as a result of a serious medical condition, but was allowed to return to Amtrak's employ after she was cleared by her doctor for work, albeit not in her original position.  She has presented no evidence that Defendant sought to exclude her from a broad class or range of jobs.  That Defendant may have been aware of her aneurysm and did not hire or reinstate her to a single position in particular is legally insufficient for establishing a "regarded as" claim under the ADA.  See Wilson, 475 F.3d at 179 (mere awareness of some impairment not enough to survive summary

judgment); 29 C.F.R. § 1630.2(j)(3)(i) (must be precluded from "a class of jobs or a broad range of jobs in various classes").

As such, Defendant is entitled to summary judgment on Plaintiff's ADA claim because she has failed to make out a prima facie case.  Similarly, Plaintiff's PHRA claim must also fail.  Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 382 (3d Cir. 2002) (disposition of ADA claim for failing to make out prima facie case "applies with equal force" to dispose of PHRA claim).

B.    FMLA Claim

It is well recognized that the Family and Medical Leave Act both creates substantive rights and prohibits discrimination based on the exercise of those rights.  29 U.S.C. § 2615(a)(1)- (2) (delineating between "exercise of rights" and "discrimination"); see generally Hodgens v. General Dynamics Corp., 144 F.3d 151, 159-60 (1ˢᵗ Cir. 1998) (discussing "prescriptive" and "proscriptive" claims under FMLA); Dogmanits v. Capital Blue Cross, 413 F. Supp. 2d 452, 462 (E.D. Pa. 2005) (same).  If an eligible employee has a serious health condition and is unable to work, the FMLA requires that the employer provide her with up to 12 work weeks of leave in a 12-month period.  29 U.S.C. § 2612(a)(1)(D).  Such leave may be granted on an unpaid basis.  29 U.S.C. § 2912(c).  Upon the employee's return from FMLA leave, she is generally entitled to be reinstated to her former or an equivalent position.  29 U.S.C. § 2614(a)(1).  It is unlawful for employers to discriminate against employees for taking FMLA leaves in its employment decisions.  29 C.F.R. § 825.220(c).

In order to establish a claim of retaliation, a plaintiff must show that (1) she took an FMLA leave; (2) suffered an adverse employment action; and (3) the adverse action was causally related to the protected leave.  Conoshenti v. Public Service Electric & Gas Co., 364 F.3d 135,

10

146 (3d Cir. 2004). One may proceed on a FMLA retaliation claim under either the Price Waterhouse or McDonnell Douglas legal frameworks. Conoshenti, 364 F.3d 135, 146-48 (analyzing causation under "mixed motive" framework); Sommer v. Vanguard Group, 380 F. Supp. 2d 680, 687 (E.D. Pa. 2005) (burden shifting analysis).

Under Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), if plaintiff presents "direct evidence" that her FMLA leave was a "substantial factor in the [adverse employment action], the burden of persuasion on the issue of causation shifts, and the employer must prove that it would have [made the same adverse decision] even if it had not considered the FMLA leave." Conoshenti, 364 F.3d at 147 (quoting Fakete v. Aetna, Inc., 108 F.3d 335, 338 (3d Cir. 2002)) (internal quotations omitted). "Direct evidence" is evidence sufficient for the factfinder to find that the decisionmaker "placed substantial negative reliance on an illegitimate criterion in reaching [his] decision." Connors v. Chrysler Financial Corp., 160 F.3d 971, 976 (3d Cir. 1998); Conoshenti, 364 F.3d at 147 n.10. However, the "direct" modifier is "imprecise" since certain circumstantial evidence may nevertheless trigger the Price Waterhouse analysis, as long as the evidence may be fairly considered to reflect directly on the existence of the alleged unlawful bias at issue. Fakete, 308 F.3d at 339. For example, "statements of a person involved in the decisionmaking process that reflect a discriminatory or retaliatory animus of the type complained of in the suit [] even if ... not made at the same time as the adverse employment action" may nevertheless constitute "direct" evidence. Id. (quoting Hook v. Ernst & Young, 28 F.3d 366, 374 (3d Cir. 1994) (internal quotations and citations omitted).

11

Plaintiff alleges that Amtrak retaliated against her for taking FMLA leave by (1) terminating her from her position;[5] (2) failing to reinstate her upon her return; and (3) subsequently failing to hire her for a position for which she applied. However, Defendant argues that it is entitled to summary judgment because (1) Amtrak was within its right to terminate Plaintiff when she exceeded the allowable duration of her FMLA leave; and with regard to (2) and (3), there was no causal connection between Plaintiff's FMLA leave and her not being reinstated or hired, and in any event, she cannot demonstrate pretext.

As an initial matter, Defendant's argument that Plaintiff's termination cannot be a basis for her retaliation claim is inapposite. This argument is essentially premised on the idea that Plaintiff no longer had a right to keep her original job once she exceeded her FMLA leave. However, here Plaintiff is not suing for a "prescriptive" FMLA violation, but instead claims that Amtrak unlawfully retaliated against her for engaging in a protected activity. Certainly, once an employee exceeds the duration of her protected leave, the employer is not obligated by FMLA to keep open the position or to reinstate the employee upon her return. See, e.g., Cehrs v. Northeast Ohio Alzheimer's Research Center, 155 F.3d 775, 784-85 (6th Cir. 1998) (employer entitled to summary judgment on FMLA claim where employer terminated employee who continued to be ill and unable to return to work after twelve weeks); 29 C.F.R. § 825.214(b) (if "the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition, the employee has no right to restoration

---

[5] Contrary to Defendant's contention, this is not a "new" claim presented for the first time by Plaintiff in her opposition to summary judgment. Indeed, her Amended Complaint is explicit in its allegation that "Plaintiff was unlawfully terminated from the position she held immediately prior to her medical leave of absence in retaliation for exercising her FMLA rights." Am. Compl. ¶ 38.

to another position under the FMLA"). However, the focus in retaliation cases is on the

subjective motive of the employer. See generally Barry v. Wing Memorial Hospital, 142 F.

Supp. 2d 161, 165 (D. Mass. 2001) (employer intent is irrelevant in "prescriptive" claims, but

"[w]ith proscriptive rights ... the issue is whether the employer took the adverse action because of

a prohibited reason or for a [proper] one"). That Amtrak may have had a legitimate basis for its

employment decision is not a complete defense to a "proscriptive" FMLA claim. While Amtrak

may generally be justified in terminating Plaintiff because she remained absent at the end of her

FMLA leave, this does not necessarily preclude the finding that unlawful considerations may

have nevertheless played a determinative role in the particular decision at issue. That, after all, is

the whole premise behind the "mixed-motive" theory of discrimination.

    In this case, Plaintiff has demonstrated a genuine issue of fact as to whether the

termination, failure to restore, and failure to hire were carried out in retaliation for her exercise of

her FMLA rights.[6] The Court agrees with Plaintiff that Venturella's email in this case constitutes

---

[6] There is no real dispute that Plaintiff took an FMLA leave and that the challenged employment actions are adverse. The Court is cognizant, however, that some courts have held that a termination is not adverse for purposes of FMLA retaliation claims where there is no dispute that the plaintiff employee could not have worked at the time of the termination. See Dogmanits v. Capital Blue Cross, 413 F. Supp. 2d 452, 464 (E.D. Pa. 2005) ("to show that termination was adverse, Plaintiff needs to present evidence indicating that she could have performed her job duties at the time of her termination"); Alifano v. Merck & Co., Inc., 175 F. Supp. 2d 792, 795 (E.D. Pa. 2001) (same). However, this Court is unpersuaded by those decisions because they rely on case law and language from substantive FMLA cases and appear to conflate the proscriptive and prescriptive inquiries. See Alifano, 175 F. Supp. 2d at 795 (citing Clark v. Germantown Hospital & Medical Center, 2001 WL 122221, *2 (E.D. Pa. Feb. 13, 2001) (dismissing FMLA claim because "[plaintiff] did not have a right to be restored to her prior or similar position") and 29 C.F.R. § 825.214(b) (no right to restoration if unable to work)); Dogmanits, 413 F. Supp. 2d at 464 (citing Alifano, 175 F. Supp. 2d at 795). Furthermore, Dogmanits and Alifano decisions are distinguishable because there was no direct evidence of discrimination in either of those cases and thus the courts were proceeding under the McDonnell Douglas analysis.

13

direct evidence of discrimination.  It is true that one possible interpretation of Venturella's use of the term "extended ... absences" could be in reference to the fact that Plaintiff had exceeded the leaves allowed by statute; however, this is clearly not the only reasonable reading.  A factfinder could reasonably find that the email indicates that Venturella placed substantial negative reliance on the fact that Plaintiff took FMLA leave in making the decision to terminate her.  Furthermore, given that Venturella was also responsible for determining who was hired to replace Plaintiff in the summer of 2004 and who was interviewed for the additional position posted a few months later, the email is sufficient to create an issue of fact as to whether these subsequent decisions were causally related to Plaintiff's medical leave, a portion of which was undisputedly protected by the FMLA.

Additionally, Defendant's argument that there is no causal connection between its failure to restore Plaintiff to her old position in July 2004 and Plaintiff's FMLA leave is also unavailing. It is true that Plaintiff did not contact anyone upon her return to ask about the possibility of reinstatement.  However, a reasonable trier of fact could find, under the circumstances here, that Plaintiff's failure to do so was attributable to her understanding that she would not be reinstated upon her return, an understanding fostered by what Davidson allegedly told her in April.  Thus, this also presents a fact question sufficient to preclude summary judgment.

---

The Alifano court also cites to Hodgens v. General Dynamics Corp., 144 F.3d 151 (1st Cir. 1998) in support of its conclusion about the lack of adversity, but a careful reading of Hodgens makes clear that the First Circuit granted summary judgment for the employer because plaintiff was unable to demonstrate pretext.  See id. at 166.  In fact, the Hodgens court was explicit that "[t]here is no dispute as to the second element [of the prima facie case]: [plaintiff]'s termination was an adverse action."  Id. at 161.

Certainly, there is no clear picture of liability in this case; the final determination will be up to the factfinder.  It is undisputed that the candidates hired for Plaintiff's position possessed technical backgrounds that Plaintiff did not and that Plaintiff had taken numerous extended medical leaves in the past and was always reinstated.  While Defendant is correct that these facts ultimately weaken Plaintiff's case, however, given the email, the Court finds that such circumstances nevertheless more properly go to the weight, rather than to the sufficiency of Plaintiff's evidence.  Therefore, summary judgment on Plaintiff's retaliation claim is precluded.[7]

IV.   CONCLUSION

In conclusion, for the reasons articulated above, Defendant's Motion for Summary Judgment is granted in part, and denied in part.  An appropriate Order follows.

---

[7] Alternatively, even if the McDonnell Douglas burden-shifting framework applied, the email may also raise an inference of pretext sufficient for a reasonable factfinder to disbelieve Defendant's proffered legitimate, non-discriminatory reasons for the employment actions at issue.

15

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANN KEIM,                                         CIVIL ACTION
     Plaintiff,
                                :
     vs.                         :

NATIONAL RAILROAD                                                        4338
PASSENGER CORPORATION,             NO.  05-CV-~~4998~~
     Defendant.               :

## ORDER

AND NOW, this  25th day of July 2007, upon consideration of Defendant National

Railroad Passenger Corporation's ("Amtrak") Motion for Summary Judgment (Doc. No. 27),

Plaintiff Ann Keim's Response in Opposition (Doc. No. 29), Defendant's Reply (Doc. No. 30)

and Plaintiff's Sur-Reply (Doc. No. 31), it is hereby ORDERED that Defendant's Motion is

GRANTED in part and DENIED in part.  It is further ORDERED as follows:

1.     Summary judgment is GRANTED in favor of Defendant Amtrak and against
        Plaintiff on Plaintiff's ADA and PHRA claims (Counts I and III of Plaintiff's
        Amended Complaint).

2.     Summary judgment is DENIED on Plaintiff's FMLA retaliation claim (Count II).

3.     The parties shall appear before the Court on 11:00 a.m. on August 20, 2007 at
        6614 United States Courthouse, 601 Market Street, Philadelphia, Pennsylvania for
        a final pretrial conference.

BY THE COURT:

Legrome D. Davis, J.